**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

```
                                    :
RICHARD K. DOTY,                    :
                                    :      Civil Action No.
              Plaintiff,            :      06-3249 (NLH)
                                    :
         v.                         :      O P I N I O N
                                    :
FEDERAL BUREAU OF PRISONS,          :
                                    :
              Defendants.           :
                                    :
```

**APPEARANCES:**

> RICHARD K. DOTY, pro se
> #42958-018
> FCI/CAMP
> Fort Dix, New Jersey 08640

**NOEL L. HILLMAN, United States District Judge**

Petitioner RICHARD K. DOTY (hereinafter "Petitioner"), currently confined at the FCI Fort Dix minimum security prison camp (hereinafter ""Fort Dix Camp"), filed an application for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 and submitted the required filing fee.   The application consists of Petitioner's petition (hereinafter "Petition")[1] and numerous exhibits, with the entire package totaling sixty seven pages.

---

[1] On August 8, 2006, Petitioner submitted a letter amending two statements in his Petition.  See Doty v. Federal Bureau of Prisons, 06-3249 (NLH), Docket Entry No. 2.  These amendments, however, do not change the result of the Court's analysis in this matter.

## BACKGROUND

Petitioner, an attorney of thirty years who had to "surrender his license to practice law for a five year period" as a result of committing the underlying offenses, see Pet., Ex. E. at 2, is currently confined at the Fort Dix Camp correctional facility. See Pet. at 3. Petitioner was placed at Fort Dix by the Bureau of Prisons (hereinafter "BOP") after Petitioner's underlying conviction resulted in the sentence imposed by Judge Merryday of the United States District Court for the Middle District of Florida. See id. at 2. The "Imprisonment" part of Judge Merryday's sentencing and commitment order had a "checkmark" placed in front of the line reading "The court makes the following recommendations to the [BOP]: that the defendant be placed in a minimum security facility as near to Philadelphia, PA[,] as possible."[2] See Pet., Ex. A at 3. After Petitioner began serving his sentence at Fort Dix, Petitioner's Team Unit "recommended transferring [Petitioner] to a CCC/Halfway House 90 to 60 days ahead of [Petitioner's] projected date of release," and the recommendation was approved by Petitioner's Camp Unit Manager. Pet., Ex. E at 2, 9.

---

[2]    It is not entirely clear to this Court if the line is part of a pre-printed form or was actually entered by Judge Merryday. However, the distinction is irrelevant for the purposes of the Court's analysis.

Petitioner filed the instant Petition asserting that: (a) Petitioner's placement at Fort Dix was improper because Fort Dix Camp is not "as near to Philadelphia, PA[,] as possible" since "[t]he BOP maintains no less than two [halfway houses] in Philadelphia," see Pet. at 3, 14; and (b) "[u]pon [Petitioner's] information and belief, Fort Dix Camp [officials] arbitrarily added one or more factors . . . to the mandatory considerations of 18 U.S.C. § 3621(B) that are to be considered in determining the placement or transfer of an inmate in or to a CCC and/or in calculating the time to be served in a CCC," and these "additional factors" constitute "unwritten" and "unpublished" policy which is "applied by [the officials of] Fort Dix Camp categorically . . . and put in force by Fort Dix Camp as a matter of mere convenience and expedience."[3]  Pet. at 7. In addition, Petitioner "request[ed] this Court to grant Petitioner leave of court to . . . take all necessary discovery in the case sub jurice and to seek appointment of counsel to assist Petitioner."  Id. at 6.

---

[3]

It appears that Petitioner conflates the issue of being placed "as near to Philadelphia as possible" with that of Petitioner's right to be transferred to "a" CCC.  See Pet. 12-15.  These issues are, however, entirely distinct and, therefore, are treated by this Court accordingly.

## STANDARD OF REVIEW

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers.[4]  Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972). A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance.  See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).

Petitioner is seeking a writ of habeas corpus and review of an agency action.  As they relate to habeas relief, this Court has jurisdiction to consider Petitioner's claims under 28 U.S.C. § 2241, the only statute that confers habeas jurisdiction to hear the petition of a federal prisoner who is challenging not the validity but the execution of his sentence.  A habeas petition filed in the district where the petitioner is confined provides a remedy to challenge the effect of events subsequent to imposition of his sentence.  See Gomori v. Arnold, 533 F.2d 871, 874-75 (3d Cir. 1976).  Examining such challenge, the Court is required to "hold unlawful and set aside agency actions, findings, and conclusions found to be . . . not in accordance with law."  5 U.S.C. §

---

[4]

While Petitioner is an attorney with thirty years of legal experience, the Court affords Petitioner the lenient standard applicable to layman pro se applicants.

706(2)(A). However, "the Court is not empowered to substitute its judgment for that of the agency." Citizens to Preserve Overton Park v. Volpe, 401 U.S. 402, 416 (1971). Therefore, this Court must: (1) determine whether the denial of Petitioner's request for re-designation was a permissible construction and/or application of the regime set forth in the Program Statements at issue; and (2) uphold the agency ruling if such construction was permissible. Cf. Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984) (outlining the two-step analysis to determine the validity of an agency regulation and of application(s) of such regulation).

## DISCUSSION

### A.   Leave to Conduct Discovery

Petitioner seeks leave to conduct discovery (presumably, under Rule 6, 28 U.S.C. § 2254), although Petitioner does not specify what discovery Petitioner wishes to conduct. See Pet. at 6.

A District Court has discretion to grant discovery in habeas corpus proceedings for "good cause" shown. See Rule 6, 28 U.S.C. § 2254. "Good cause" is demonstrated when a petitioner establishes a prima facie claim for relief, and petitioner's claims are specific, not merely speculative or conclusory. See Murphy v. Johnson, 205 F.3d 809 (5th Cir.2000). In order to establish "good cause," a petitioner must "point to specific evidence that might be

discovered that would support a constitutional claim." <u>See</u> <u>Marshall v. Hendricks</u>, 103 F.Supp.2d 749, 760 (D.N.J.2000), <u>rev'd</u> <u>in part on other grounds</u>,307 F.3d 36 (3d Cir.2002) (citing <u>Deputy</u> <u>v. Taylor</u>, 19 F.3d 1485, 1493 (3d Cir.1994)).  Since Petitioner does not point to anything but Petitioner's own conjecture about "unwritten," "unpublished," "arbitrary added . . . factors . . . applied by [the officials of] Fort Dix Camp categorically," this Court concludes that Petitioner has not demonstrated good cause for his discovery request.  Accordingly, the Court denies Petitioner's motion for discovery pursuant to Rule 6 of the Rules Governing Section 2254 Proceedings, 28 U.S.C. § 2254.

**B.    Appointment of Counsel**

The Court has discretion to appoint a federal public defender or a CJA attorney to represent a state or federal habeas petitioner when the petitioner is financially eligible for CJA appointment *and* the appointment of counsel is in the interest of justice.  <u>See</u> 28 U.S.C. § 2254(h); 18 U.S.C. § 3006A(a)(2)(B).  The appointment of counsel would be mandatory if the Court determines that an evidentiary hearing is required.  <u>See</u> Rule 8(c) of Rules Governing Section 2254 Cases; <u>United States v. Iasiello</u>, 166 F.3d 212 (3d Cir. 1999).  Discretionary appointment is permitted if: (1) the Court determines that counsel is necessary for effective utilization of discovery procedures, <u>see</u> Rule 6(a) of Rules

Governing Section 2254 Cases; or (2) the Court determines that the petitioner has presented a non-frivolous claim and the appointment will benefit the petitioner and the Court.  See Reese v. Fulcomer, 946 F.2d 247, 263-4 (3d Cir. 1991); Souder v. McGuire, 516 F.2d 820, 822, 824 (3d Cir. 1975); Blasi v. Attorney General of Commonwealth of Pennsylvania, 30 F. Supp. 2d 481, 488-9 (M.D. Pa. 1998).  In making its discretionary determination, the Court shall consider various factors, including: (a) complexity of issues; (b) whether factual investigation is needed; (c) whether issues presented are straightforward and capable of resolution on the record; and (d) whether petitioner is capable of presenting his claims, understanding the issues, and meeting the court's procedural requirements.  See Reese, 946 F.2d at 263-4.

Since Petitioner does not raise any argument in support of Petitioner's request for appointment of counsel short of Petitioner so desiring, it appears that, at this juncture, the appointment of counsel for Petitioner pursuant to 18 U.S.C. § 3006A(a)(2)(B) and Appendix I of the Local Rules is neither mandatory nor in the interest of justice.  See Reese v. Fulcomer, 946 F.2d 247, 263 (3d Cir. 1991), cert. denied, 503 U.S. 988 (1992); Souder v. McGuire, 516 F.2d 820, 822, 824 (3d Cir. 1975).  Therefore, Petitioner's request for appointment of counsel is denied.[5]

---

[5]

Had Petitioner's case not been disposed of at the instant stage, Petitioner's request for appointment of counsel would be denied as premature.  However, since the Court makes its final

## C.   Failure to Meet the Exhaustion Requirement

Petitioner's Petition states that Petitioner's request for transfer to a CCC in Philadelphia was (a) denied by Petitioner's Camp Unit Manager, but (b) not appealed further administratively. See Pet. at 9.

> A federal prisoner ordinarily must exhaust his administrative remedies before petitioning for a writ of habeas corpus pursuant to § 2241. [See] Moscato v. Federal Bureau of Prisons, 98 F.3d 757, 760 (3d Cir. 1996); see also Callwood v. Enos, 230 F.3d 627, 634 (3d Cir. 2000) ("we have consistently applied an exhaustion requirement to claims brought under § 2241").  If a petitioner has failed to exhaust his administrative remedies prior to filing a § 2241 petition, the District Court may in its discretion either "excuse the faulty exhaustion and reach the merits, or require the petitioner to exhaust his administrative remedies before proceeding in court." Brown v. Rison, 895 F.2d 533, 535 (9th Cir. 1990), abrogated in part on other grounds by Reno v. Koray, 515 U.S. 50 (1995); see also Greene v. Meese, 875 F.2d 639, 643 (7th Cir. 1989) (explaining that exhaustion of administrative remedies is not a jurisdictional prerequisite).

Ridley v. Smith, 2006 U.S. App. LEXIS 11127, at *2-3 (3d Cir. Pa. May 3, 2006).   While the exhaustion requirement is not jurisdictional but that of prudence of comity, the requirement is diligently enforced by the federal courts.  See Moscato, 98 F.3d at 761 (noting that "a procedural default in the administrative process bars judicial review because the reasons for requiring that prisoners challenging disciplinary actions exhaust their administrative remedies are analogous to the reasons for requiring

---

determination with regard to all Petitioner's claims in the instant Opinion and accompanying Order, the denial of counsel is final.

that they exhaust their judicial remedies before challenging their convictions; thus, the effect of a failure to exhaust in either context should be similar"); cf. Granberry v. Greer, 481 U.S. 129 (1987) (stating that exhaustion is not a jurisdictional requirement but that of comity); Rose v. Lundy, 455 U.S. 509, 515-18 (1982) (same). Nonetheless, if

> [i]t . . . appear[s] that [Petitioner] did not fully exhaust his administrative remedies . . . before bringing this action[, this Court [c]ould [still] allow Petitioner's Petition to proceed since enforcement of exhaustion requirement could] be[] futile given the . . . date scheduled for his CCC . . . eligibility release.

Dilorenzo v. Fed. Bureau of Prisons, 2006 U.S. Dist. LEXIS 33514, at *3 (D.N.J. May 15, 2006). Since the circumstances of Petitioner's case indicate that Petitioner is approaching his scheduled CCC transfer and/or experiencing special circumstances, this Court allows Petitioner's application to proceed in order to assure that Petitioner's request for judicial review would not be rendered futile by the simple passage of time while Petitioner's exhausts his administrative remedies.

D.    Due Process Rights

Petitioner bases his claim for transfer to another locale solely on the checkmark placed in front of the line in the "Imprisonment" part of Judge Merryday's sentencing order that read, "[t]he court makes the following *recommendations* to the [BOP]: that the defendant be placed in a minimum security facility as near to

Philadelphia, PA[,] as possible." <u>See</u> Pet., Ex. A at 3 (emphasis supplied). This is not a valid claim.

Not only it is obvious from the above-cited language that Judge Merryday was entering nothing but a suggestion--leaving the actual placement of Petitioner to discretion of the BOP--it is also well established that Petitioner has no Due Process liberty interest in being assigned to the correctional institution of Petitioner's (or even of Judge Merryday's) choice. <u>See</u> <u>Wilkinson v. Austin</u>, 125 S. Ct. 2384, 2393 (2005) (noting that the Constitution does not give rise to a liberty interest in avoiding transfers to more adverse conditions of confinement); <u>Olim v. Wakinekona</u>, 461 U.S. 238, 245 (1983); <u>Meachum v. Fano</u>, 427 U.S. 215, 224-25 (1976); <u>Montayne v. Haymes</u>, 427 U.S. 236, 243 (1976); <u>Walker v. Hughes</u>, 558 F.2d 1247, 1252 (6th Cir. 1977)("Federal statutory law gives federal prison officials full discretion in the treatment of prisoners and does not restrict the authority of prison officials over the inmates as to placement in more restrictive living status, transfer to other prisons, subjection to significant and adverse effects on parole dates, and deprivation of privileges"). Moreover, the matters of placement of prisoners are among the "wide spectrum of discretionary actions that traditionally have been the business of prison administrators rather than of the federal courts." <u>Meachum</u>, 427 U.S. 225. In fact, the Supreme Court has held:

> The initial decision to assign the convict to a particular institution is not subject to audit under the Due Process Clause, although the degree of confinement in one prison may be quite different from that in another. . . . Neither, in our view, does the Due Process Clause in and of itself protect a duly convicted prisoner against transfer from one institution to another within the . . . prison system. Confinement in any . . . institution[] is within the normal limits or range of custody which the conviction has authorized . . . to impose.

Id. at 224-25 (1976).

Therefore, Petitioner's placement at Fort Dix Camp, a correctional facility located not as close to Philadelphia as Petitioner apparently desires, does not violate Petitioner's rights.


E.   **Petitioner's Challenge Under Woodall**

Federal law imposes upon the BOP the obligation and discretion to designate the place of a prisoner's imprisonment, as follows:

> Place of imprisonment.--The Bureau of Prisons shall designate the place of the prisoners's imprisonment. The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering -
>
> (1)   the resources of the facility contemplated;
>
> (2)   the nature and circumstances of the offense;
>
> (3)   the history and characteristics of the prisoner;

    (4)    any statement by the court that imposed the sentence--

        (A)    concerning the purposes for which the sentence to imprisonment was determined to be warranted; or

        (B)    recommending a type of penal or correctional facility as appropriate; and

    (5)    any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of Title 28.

In designating the place of imprisonment or making transfers under this subsection, there shall be no favoritism given to prisoners of high social or economic status. The Bureau may at any time, having regard for the same matters, direct the transfer of a prisoner from one penal or correctional facility to another.

18 U.S.C. § 3621(b).

In addition, federal law provides that prisoners shall, to the extent practicable, serve the last portion of their imprisonment under conditions that will facilitate their transition from prison life to the community.

> Pre-release custody.  The Bureau of Prisons shall, to the extent practicable, assure that a prisoner serving a term of imprisonment spends a reasonable part, not to exceed six months, of the last 10 per centum of the term to be served under conditions that will afford the prisoner a reasonable opportunity to adjust to and prepare for the prisoner's re-entry into the community.

18 U.S.C. § 3624(c).

Recently, in <u>Woodall v. Federal Bureau of Prisons</u>, 432 F.3d 235 (3d Cir. 2005), the Court of Appeals for the Third Circuit considered and rejected the validity of BOP regulations that became effective on February 14, 2005, which *firmly* restricted an inmate's

CCC transitional placement to the last 10% of the inmate's sentence.   Instead, the Third Circuit held that both initial placement decisions and pre-release transfer decisions must be individualized determinations based upon the factors enumerated in § 3621(b).

> In sum, individual determinations are required by § 3621(b). ... While the BOP may exercise considerable discretion, it must do so using the factors the Congress has specifically enumerated.  . . .  The dissent argues that the § 3621(b) factors need not be considered by the BOP until an inmate transfer is "actually considered." We disagree.  . . .  The statute as a whole, if it is to have practical effect, indicates that the factors enumerated must be considered in making determinations regarding where to initially place an inmate, as well as whether or not to transfer him. ... The congressional intent here is clear: determinations regarding the placement scheme-including where a prisoner is held, and when transfer is appropriate-must take into consideration individualized circumstances. In short, we conclude that the § 3621(b) factors apply to BOP determinations regarding whether or not initial placements or transfers are appropriate. We thus do not find that the factors are limited by the temporal references in § 3624.

Woodall, 432 F.3d at 247, 249-50.

Hence, a prisoner is entitled to an individualized determination as to his pre-release placement based upon the factors identified in § 3621(b).  However, as noted by the Third Circuit, the fact that the BOP *may* assign a prisoner to a CCC *does not mean that it must*, see Woodall, 432 F.3d at 251, and if the prison officials do consider the statutory enumerated factors, the Woodall test is met even if the inmate's desire for CC placement is left unsatisfied.

In the case at bar, Petitioner asserts that his rights were violated because "Fort Dix Camp arbitrarily *added* one or more factors . . . to the mandatory considerations of 18 U.S.C. § 3621(b) that are to be considered in determining the placement or transfer of an inmate in or to a CCC and/or in calculating the time to be served in a CCC," and these "additional factors" constitute "unwritten" and "unpublished" policy.   Pet. at 7 (emphasis supplied).    Hence, Petitioner does *not* assert that the <u>Woodall</u> test was not met in his case.  Rather, Petitioner challenges BOP's discretion is using *additional* considerations.   However, the BOP may legitimately entertain *additional* considerations, as long as these additional factors do not preclude good-faith consideration of the statutorily-provided factors.  <u>See</u> <u>Woodall</u>, 432 F.3d at 247-48.

Petitioner specifies that these "additional factors" include the following: (a) whether the inmate has a job; (b) whether the inmate has a residence, home or place to live; (c) whether the inmate has a family able to provide the inmate with housing or other financial support; (d) whether the inmate has a business to return to; and (e) whether the inmate has sufficient financial means.  <u>See</u> <u>id.</u>

These *additional* considerations, however, constitute entirely legitimate factors.

> The purpose of a CCC placement is to help the inmate with the transition from prison life.   Clearly, certain

prisoners need more assistance with the transition than
others.  Those prisoners who are serving long sentences,
who are uneducated or lack marketable job skills, who
suffer from mental or physical ailments, or who lack any
type of resources or support network outside prison
likely need special support to ease their re-entry into
society.   In contrast, inmates like the Petitioner who
are serving shorter sentences, for basically white collar
offenses, who have assets, family support, education, and
vocational skills are less likely to need as much
assistance in their transition from prison to society.

Kleinman v. Fed. Bureau of Prisons, 2006 U.S. Dist. LEXIS 13502, at

*10-11 (D.N.J. Mar. 29, 2006); see also DiLorenzo, 2006 U.S. Dist.

LEXIS 33514, at *9 ("[Petitioner] has indicated no special need for

transitional placement; in fact, he has demonstrated strong

employment prospects, family support, and an approved residence

upon his release from prison").  As long as the BOP employs these

considerations in addition to those stated in 18 U.S.C. § 3621(b),

and Petitioner expressly so acknowledges, see Pet. at 7,

Petitioner's rights are not violated.   (Moreover, a statutory

interpretation by the District Court taken by the BOP as a guiding

tool in evaluation of CCC placements could hardly be qualifies as

an  "unwritten" and "unpublished" policy.)

Finally, Petitioner appears to allege that he is experiencing

"special" circumstances in the form of: (a) Petitioner's desire "to

enter a comprehensive alcohol treatment program";[6] (b) Petitioner's

---

[6]

Petitioner, however, admits that "Fort Dix has [already]
enabled [Petitioner] to quit smoking and drinking, for which
[Petitioner is] grateful."  Pet., Ex. E at 2.

wish "to find employment and become self-supporting"; (c) Petitioner's interest in "becom[ing] sooner and better able to pay restitution ordered and back taxes"; (d) Petitioner's desire "to return to his own doctors for continuing treatment and therapy [of Petitioner's] bladder cancer";[7] (e) Petitioner's wish to "reconcile with his estranged wife and rebuild their marital relationship of 28 years"; (f) Petitioner's aspiration "to become able to assist his daughter with her college education"; and (g) Petitioner's hope to "become able to assist his son with pursuing his legal education." Pet. at 13. This Court, however, finds that none of the above assertions indicates a "special need" for transitional placement.

> Petitioner's arguments as to why he needs a CCC placement of [longer period of time] is not persuasive. Petitioner's concerns appear very real and his appeal[] to this Court [is] no doubt made in good faith. While respectful of the havoc that results following the incarceration of a loved one, the Court reminds Petitioner that the focus of CCC placement is on the prisoner and not the needs of the family. Petitioner has not articulated any circumstance that would warrant additional time to ease his reentry into society, compared to the many federal prisoners who are poor, uneducated and untrained, and who are serving long sentences. Prisoners would certainly like the less rigorous confinement of a CCC and might even get a head start on tasks like finding a job or a home. However, the notion that this type of easier confinement is necessary to aid re-entry is counter-intuitive. Furthermore, after reviewing many petitions like the instant one, the Court is left with the conclusion that

---

[7] Petitioner's Petition, however, does not indicate in any fashion that Petitioner's medical needs are neglected at Fort Dix. See generally, Pet.

> in many cases the issue is not one of helping re-entry
> into society, but simply providing the inmate with a more
> favorable form of incarceration.  See Sandin v. Conner,
> 515 U.S. 472 (1995).  Petitioner claims that he is
> deserving of a longer CCC placement because his ability
> to obtain work depends on it.  . . .  It appears that
> Petitioner has misunderstood the purpose behind CCC
> placement.  The point of CCC placement is not to assist
> family members, but rather to allow the prisoner to
> re-integrate into society.

Kleinman, 2006 U.S. Dist. LEXIS 13502, at *11-12; see also

Dilorenzo, 2006 U.S. Dist. LEXIS 33514, at *9.  The considerations

stated in Kleinman apply with equal force to the circumstances of

the case at bar.  Therefore, Petitioner's "special circumstances"

do not qualify Petitioner for an earlier CCC placement.


## CONCLUSION

For the foregoing reasons, Petitioner's Petition is denied.

An appropriate order accompanies this opinion.



_____
**NOEL L. HILLMAN**
**United States District Judge**

Date: September 1, 2006